**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AARON D. MARTIN, on behalf of himself and all others similarly situated, | : : : | **CIVIL ACTION** |
| Plaintiff | : : | |
| vs**.** | : : | **DOCKET NO. 2:10-cv-02203-JHS** |
| | : : | **JURY TRIAL DEMANDED** |
| FORD MOTOR COMPANY | : : | **CLASS ACTION** |
| | : : : | |
| Defendant | : | |

**AMENDED CLASS ACTION COMPLAINT**

1.      This is a class action lawsuit brought by Plaintiff, Aaron D. Martin on his own behalf and a nationwide Class of current Ford Windstar owners and lessees with defective rear axle in their purchased and/or leased Windstar, model years 1999-2003 ("Vehicle").

2.      This action arises from Defendant's failure, despite their longstanding knowledge of the problem, to disclose to Plaintiff and other consumers that the Vehicle's rear axle was defectively designed in such a way that predisposed them to premature wear and failure resulting in very serious and expensive damage to the Vehicles and/or catastrophic failure of the rear axle.

3.      Not only did Defendant actively conceal the fact that the rear axle was defective (and requires costly repairs to fix), but it did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Vehicle.  Additionally, the axle problem could

completely fail without prior notice while the Vehicle is being operated, posing a serious safety concern to the occupants of Vehicle, the occupants of other vehicles, and/or the public.

4.      Defendant also concealed, suppressed, and failed to disclose that the axle problem in the Vehicle emanates from their defective vehicle design, including designing the rear axle as an unsealed, hollow cylinder that because of its design collects and traps water and other corrosive agents, causing it to rust from the inside out.  This problem is compounded by the fact that these axles do not contain drainage ports.  Ultimately, the rust weakens these axles, which bear significant loads while the Vehicle is being operated, and renders the Vehicle's rear axle susceptible to failing while the Vehicle is being operated.

5.      The rear axles in the Vehicles are uniformly and inherently defective in design, and prematurely fail under normal operating conditions in advance of their expected useful life.

6.      Upon information and belief, Defendant has been aware for years of the true nature and cause of the axle problem in the Vehicle. This knowledge is evidenced by widespread complaints on the internet and elsewhere about the rear axle problem, accounts from Class members who have complained about this very issue to Defendant.

7.      Notwithstanding this knowledge, Defendant has intentionally withheld from, and/or misrepresented to Plaintiff and other consumers of the Vehicle this material information. Meanwhile, Defendant made numerous affirmative statements touting the good quality of the Vehicle.

8.      Defendant has directly benefited from the defective design by collecting money from it consumers to repair the defective rear axle it designed when the axles fail.

9.       Many owners and lessees of the Vehicles have had to repair or replace their rear axles, thereby incurring costly repairs and/or replacements as needed to return their vehicles to expected operating condition.

10.      The Vehicle poses significant safety risks as a result of the axle problem and/or defective vehicle design. The problem can remain completely hidden from consumers for years until the rear axle suddenly and without warning fails by cracking or breaking into two separate units, and potentially do so while the Vehicle is being operated, thereby posing a serious safety concern to the occupants of the Vehicles, the occupants of other vehicles, and/or the public.

11.      As a result of Defendant's unfair, deceptive and/or fraudulent business practices, as set forth herein, the Vehicles have a lower market value and are inherently worth less than they would be in the absence of the axle problem.

## THE PARTIES

12.      Plaintiff, Aaron D. Martin, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 113 Ronway Drive, Avondale, Pennsylvania.  He brings this action in his own right and on behalf of all others similarly situated.

13.      Plaintiff purchased a 2001 Ford Windstar in September of 2001.

14.      The VIN number of the Windstar Mr. Martin purchased is "2FMZA52451BA90811."

15.      In May 2010, Plaintiff's wife heard a strange sound emanating from under the vehicle.  Plaintiff then looked underneath it and saw what looked like a crack.  He then drove the

vehicle to a mechanic's shop to drop off.  On the way there, he heard a terrible crack, and then the sound of metal dragging against asphalt.  At this point, he lost control to a large degree, and coasted into a parking lot off the side of the road.

16.     The experience of the above representative plaintiff is typical of the experiences of the other Class members.

17.     Defendant Ford is a corporation duly organized and existing under the laws of the State of Delaware, having a principal place of business at One American Road, Dearborn, Michigan.  Ford engages in continuous and substantial business throughout the United States, and more specifically within the District in which this Court is situated, and is a well known seller of motor vehicles. Defendant Ford, distributed and sold vehicles under the Ford name, one of which was the Windstar model involved in this case.

## **VENUE**

18.     Ford issued a warranty set forth in the warranty booklet delivered with each new Windstar, and it is responsible for the design, manufacture, sale and distribution of the Windstar Vehicle.

19.     Pursuant to the Class Action Fairness Act of 2005, specifically 28 U.S.C. § 1332(d)(2), federal jurisdiction exists because at least one of the members of the proposed Class is a citizen of a state other than the state(s) of the defendant's citizenship, and the total amount in controversy exceeds $5 million exclusive of interest and costs.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  The Court has personal jurisdiction over the defendant, because defendant is authorized to conduct business in

Pennsylvania and does conduct business in Pennsylvania, and has sufficient minimum contacts with this Commonwealth and/or sufficiently avails itself of the markets of this Commonwealth through its promotion, sales and marketing efforts so as to render the exercise of jurisdiction within this Commonwealth permissible.

## TOLLING OF STATUTE OF LIMITATIONS

20.     Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiff and members of the Class could not have reasonably discovered the true, latent defective nature of the Windstar rear axle until shortly before the filing of this suit.

21.     Defendant was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the rear axle, that this defect is based on a poor design, and that it will require costly repairs to fix and diminishes the resale value of the Vehicle. As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

22.     In 1994, defendant Ford introduced a new minivan model known as the Windstar, which replaced an earlier model known as the Aerostar.  After several years on the market, a redesigned Windstar was introduced to the United States market in 1999.  Ultimately, the Freestar replaced the Windstar in 2004.

23.     Upon information and belief, the design that is the flaw subject of this Complaint applies to Windstar manufactured and sold after the redesign -- model years 1999, 2000, 2001,

2002 and 2003; however, it may be discovered through the course of discovery in this action that earlier Windstars, model years prior to 1999, may have had the same or a similarly defective rear axle.

24.     At all times relevant, Defendant expressly warranted the Windstar minivan as set forth in the warranty booklet accompanying the Vehicle, and which warranted the minivan to be free from defects or deficiencies in materials or workmanship.

25.     At the onset and for a time after the Vehicle's original sale, the written warranty expressly, termed by Defendants to be a "bumper to bumper" warranty, an "authorized Ford Motor Company Dealer [would] repair, replace or adjust all parts on your vehicle that are defective in factory supplied materials or workmanship."

26.     Despite this express warranty, rear axles of the 1999-2003 models of the Windstar minivans contain a critical and inherent design flaw which creates innate structural instability and constant potential for structural failure of the rear axle during normal operation of the minivan.

27.     This design flaw has become the subject of discussion among members of the automotive community, and has resulted in documented failures of the rear axle assembly, some of which have been reported to have occurred during highway, high speed travel.  Upon information and belief, the defendant has learned of such failures.

28.     Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same axel problem with the Vehicles.

29.     Owners of the Vehicle have publicly complained to the United States government about the rear axle problems they experienced with the Vehicles. The Office of Defects Investigation (ODI) is an office within the National Highway Traffic Safety Administration (NHTSA). ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways.

30.     Based on 234 complaints, ODI launched an investigation into problems with the rear axle associated with the Ford Windstar, model years 1999-2003.

31.     According to ODI there have been reported crashes as a result of rear axle failures, and 56 percent of the complaints indicate rear axle failure occurred at speeds of forty miles per hour or greater.

32.     Even following actual and constructive notice of the problem which affects the entire 1999-2003 model runs of the Windstar, defendant has failed to remedy the defects or offer replacements for their defective, unfit and potentially dangerous products.

33.     At no time relevant have the Defendant ever notified individuals who possess 1999-2003 Windstar minivans that their Vehicles might be prone to sudden failure during operation, nor has this design flaw ever been the subject of a recall or service bulletin.

34.     The design flaw which affects the rear axle of the subject minivans is not the product of a manufacturing peculiarity or aberration of a select number of defendant's 1999-2003 model year Windstar Vehicles.  The design flaw has, does or will affect all members of the Class in the manner set forth above.  Because the design flaw may result in spontaneous fracture of the rear axle, the risk of the manifestation of such an event cannot be predicted in any reliable

manner by a consumer, and the risk of the defect's sudden manifestation currently affects all members of the Class and the public at large.

35.     It is well accepted that a structurally sound rear axle is necessary for a minivan to be considered a product of fit, average and merchantable quality, and is in fact a necessity for the normal, usual and safe operation of any minivan.  The use of a minivan intended for street use should not result in any sudden or unexpected failure which may cause the minivan's rear axle to snap, break, fracture or fall apart while the Vehicle is in operation.

36.     Inasmuch as the defendant has warranted that the minivans are fit for their usual uses, the proclivity for structural failure affecting these minivans violates the defendant's express warranties.

37.     As a direct and proximate result of defendant's conduct as set forth above, and as gives rise to the causes of action contained in the enumerated Counts below, plaintiff(s) and the Class:

        a.      Seek final injunctive relief compelling the defendant to refund the total value of the Vehicles owned by the plaintiff and the Class members, or institute a recall program during which the Vehicles will be repaired at no cost to the owners; and

        b.      Demand a finding that the 1999-2003 models of the Ford Windstar violate the implied warranty of merchantability and the express warranties which apply to the minivans; and,

        c.      Seek any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## CLASS ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Fed.R.Civ.P. 23(b)(3) on behalf of himself and all similarly situated individuals.   The Class on behalf of which he brings this action is defined as follows:

> All individuals within the United States and its territories  who have acquired, by lease or purchase, a 1999, 2000, 2001, 2002, or 2003 model year Ford Windstar minivan and still own the Vehicle.

39.     Implicit in the above Class definition are two groups which may, after the completion of discovery, deemed subcategories.  Class members who own or lease a Windstar that has already suffered a rear axle failure represent one of the subgroups.  The other subcategory would be those that own or lease Windstars with axles that have not yet failed. There are substantial common questions of fact and law to both groups.

40.     The Class is so numerous that joinder of all members is impracticable.  According to the National Highway Transportation Safety Authority, Ford manufactured and sold 1,708,381 Windstars between 1995 and 2003.  Therefore, it is believed that approximately 949,100 Windstars were manufactured with a defective rear axle.

41.     There are questions of law and fact common to the Class.  Representative questions of law and fact include:

a.     Whether defendant's 1999-2003 Windstar minivans possess the design flaw described herein;

b.     The nature and extent of any design defect;

c.     The affect on the value of any Vehicle with such a design defect;

d.     The point at which Defendant knew of the design defect;

e.     The point at which Defendant should have known of the design defect;

f.     Whether Defendant knowingly failed to disclose the design defect in the Vehicles;

g.     Whether the design flaw affecting defendant's 1999-2003 Windstar minivan constitutes a breach of the implied warranty of merchantability and of the express warranty made by the defendant;

h.     Whether Defendant was unjustly enriched by selling and/or leasing Vehicles with the design defect alleged herein;

i.     Whether the design flaw affecting defendant's 1999-2003 Windstar minivan constitutes a violation of the Magnuson-Moss Warranty Improvement Act;

j.     Whether members of the Class are entitled to the current value of a Windstar minivan, and;

k.     Whether members of the Class are entitled to have their Windstar minivan repaired by Ford, free of cost;

42.     The claims of the plaintiff are typical of the claims of the Class.  As with all members of the Class, Plaintiff bought Defendant's 1999-2003 Windstar minivans.   Defendant has refused to acknowledge and take action to remedy the design flaw in its 1999-2003 Windstar minivans. Plaintiff's minivan was, like all of defendant's 1999-2003 Windstar minivans, affected by the design flaw alleged herein.  The failure of the rear axle manifested suddenly and without warning in plaintiff's minivan.

43.     Plaintiff will fairly and adequately assert and protect the interests of the Class because:

a.     Plaintiff has retained counsel experienced in the prosecution of class action litigation, who will adequately represent the interests of the Class;

b.     Plaintiff and his counsel are aware of no conflicts of interest between plaintiff and absent Class members or otherwise;

c.     Plaintiff has or can acquire adequate financial resources to assure that the interests of the Class will not be harmed; and

      d.      Plaintiff is knowledgeable concerning the subject matter of this action and intends to vigorously prosecute this litigation.

44.      A class action provides the most fair, efficient and appropriate method for adjudicating this controversy, because:

      a.      Common questions of law or fact predominate over any questions affecting only individual members.  The design flaw at issue in this litigation is a designed-in flaw which affects every single model of the production run of the subject Vehicles during model years 1999-2003.  Every member of the Class is equally affected by this design flaw, and there are no individual issues which predominate over the Class-wide questions of law and fact which exist in this controversy, since all of the subject Vehicles are unfit and unmerchantable in the same exact manner.  No significant questions of law or fact that might affect only individual members or subClasses of individual members exist that cannot be managed through effective subClass definitions, jury interrogatory modifications or otherwise, consistent with sound judicial management, due process of law and fundamental fairness to the defendant and the Class;

      b.      Plaintiff is aware of no difficulties likely to be encountered in the management of the action as a Class action.  Indeed, given the design flaw which affects all of defendant's 1999-2003 Windstar minivans, and given defendant's uniform treatment of the members of the Class and uniform inability and/or unwillingness to remedy the problem, plaintiff believes that this action properly invokes the class action procedural device;

      c.      The individual members of the Class do not have any significant interest in prosecuting individual actions or controlling the prosecution of individual actions.  The costs and issues involved in the litigation of the fitness and merchantability issues involved herein would be so prohibitively high with respect to the relief which might be available in any individual case that it would not be economically efficient for any member of the Class to proceed on an individual basis.  Moreover, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would not only present the defendant with incompatible standards of conduct, but which might potentially prejudice individual Class members, in that separate actions by individual members of the Class would effectively result in findings of fact in the first individual action tried being accorded collateral estoppel effect in later actions;

d.      Plaintiff is aware of no litigation already commenced by a member of the Class involving the same issues presented in this action

e.      This Court is appropriate for litigation of the claims of the entire Class, as the judges of the Court are learned and experienced in class action issues; because defendant conducts substantial business within this District; and because, upon information and belief, a substantial number of the members of the Class are citizens of the Commonwealth of Pennsylvania;

f.      The difficulties which are likely to be encountered in the management of this class action are slight in comparison to other controversies which have been brought as Class actions, since the controversy is the same with respect to every Class member, and issues of individual conduct or action are not likely to arise.  In the event any issues arise which do not apply equally to all members of the Class, these issues may be effective and readily managed through the creation of subclasses of individual members, jury interrogatory modifications or otherwise, consistent with sound judicial management, due process of law and fundamental fairness to the defendant and the Class;

g.      In view of the complexities of the issues and the expenses of litigation, the separate claims of individual Class members are insufficient in amount to support separate actions, and therefore, the aggregation of claims in a class action ensures that there is a sufficient amount at stake so as to economically justify the best and most zealous efforts in discovery, motion practice and trial against the defendant, whereas individual claims do not justify such expenditures;

h.      It is unlikely that the amount which may be recovered by the individual Class members in this action would be small in relation to the expense and effort of administering this action so as not to justify a Class action.  This is so because of the economies of scale presented by a class action in a case such as this.  If handled as a Class action, the claims in this action would be subject to a single discovery period, rather than a multiplicity of repetitive and redundant discovery periods in a multiplicity of individual actions.  Such Class treatment makes the recovery of any given Class member large in relation to the expense and effort of discovery and other litigation procedures, since discovery and litigation costs and efforts can be capitated as among the claims of each Class member, resulting in lesser expenditures per Class member in attorney fees and costs, which, absent Class treatment, would otherwise be prohibitive and would threaten to overtake any recovery any Class member could expect to obtain in an individual action.  Thus, the trial of a multiplicity of individual actions would cause a wasteful depletion of the limited resources of this Court and litigants, and concentrating the litigation of many identical claims in one forum is desirable and in the interests of judicial economy and efficiency.  Indeed, the uniformity of the theories of liability and remedy against the

defendant are such as to make Class treatment especially efficient in this action;

i. Defendant have acted and/or refused to act on grounds generally applicable to the Class, thereby making final equitable or legal relief appropriate with respect to the Class.

## COUNT I

### Pennsylvania Unfair Trade Practices and Consumer Protection Law
### (On Behalf of the National Class or, Alternatively, a Pennsylvania Class)

45.     Plaintiff and the Class repeat and incorporate herein by reference each and every paragraph of this Amended Complaint as though set forth in full in this cause of action.

46.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") protects consumers against "unfair or deceptive acts or practices" in connection with the sale or advertisement of any merchandise.  73 Ps. §201-1 *et seq*.

47.     Plaintiff Martin and members of the Class are consumers who purchased and/or leased Vehicles for personal, family or household use.

48.     Defendant engaged in unlawful conduct, made affirmative misrepresentations or otherwise violated the UTPCPL. Specifically, Defendant was aware, or should have been. aware that model years 1999 through 2003 of the Ford Windstar suffered from a common design defect resulting in rear axle problems, but failed to disclose this to Plaintiff and Class members. Defendant also marketed these Vehicles as being safe Vehicles ideal for families when the Vehicles contained a known defect. These affirmative misrepresentations were material to the Vehicle purchases, and were false statements of fact.

49.     Defendant also engaged in unlawful conduct in violation of the UTPCPL by making knowing and intentional omissions. Defendant knowingly failed to disclose the design defect in the Vehicles in order to secure the sale of these Vehicles.

50.     Defendant did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the rear axle, which was not readily discoverable until years later, often after the express warranty term had expired. As a result, Plaintiff and the other Class Members were fraudulently induced to lease and/or purchase the Vehicles with the said design defects and all of the resultant problems. These facts that Defendant concealed were solely within their possession.

51.     Defendant intended that Plaintiff and all Class Members rely on the acts of concealment and omissions, so that they would purchase the Vehicles.

52.     Defendant's conduct caused Plaintiff and Class members to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiff and Class members have suffered an ascertainable loss by receiving less than what was promised.

53.     A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class. Had the defective Vehicle design in the Vehicles been disclosed, consumers would not have purchased them or would have paid less for the Vehicles had they decided to purchase them.

**WHEREFORE,** plaintiff and the Class respectfully pray for the following relief:

a.      An Order certifying the Class as defined above and appointing the undersigned as counsel for the plaintiff and the Class pursuant to Fed.R.Civ.P. 23;

b.   Final injunctive relief compelling the defendant to pay the plaintiff and each Class member the value of their defective Windstar minivan or, in the alternative, institute a recall pursuant to which the defect will be repair, at no cost to the plaintiff or the Class member;

c.   A judgment or declaration finding that defendant's 1999-2003 Windstar minivans violate the implied warranty of merchantability, the express warranties which apply to the minivans.

d.   An award of punitive damages as allowed under any applicable cause of action asserted herein;

e.   An award of attorney fees as allowed under any applicable cause of action herein or as allowed by the Court; and

f.   Any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT II

**Violations of State Consumer Protection Laws**
**(As an Alternative to a Nationwide Class, on Behalf of State SubClasses)**

54.   Plaintiff and the Class repeat and incorporate herein by reference each and every paragraph of this Amended Complaint as though set forth in full in this cause of action.

55.   Defendant's conduct complained of herein constitutes acts, uses or employment by Ford of unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations and/or knowing concealment, suppression, or omission of material facts with the intent that Plaintiff and that Class would rely upon such concealment, suppression or omission in connection with the sale, lease, marketing and advertisement.  Defendant's conduct herein is an unfair practice that has the capacity to, and did, deceive consumers into believe that they were purchasing or leasing a Vehicle that could be safely used and did not contain defective rear axle.

15

56.     All of this conduct alleged herein occurred in the course of Defendant's business. Defendant's conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions.

57.     As a proximate result of the Defendant's misrepresentations, Plaintiff and the Class members have suffered an ascertainable loss and are entitle to relief, in an amount to be determined at trial.

58.     All 50 states and the District of Columbia have enacted statutes to protect consumers against unfair deceptive or fraudulent business practices, unfair competition and/or false advertising.  At all relevant times, such statutes were in effect in each state or territoty where the Defendant does business.

59.     Defendant's actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts of practice in violation of various state consumer protection statues listed below:

> a.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code 8-19-1 *et seq.*;
>
> b.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alas. Code 45.50.471 *et seq.*;
>
> c.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Code 44-1522 *et seq.*;

d.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code 4-88-101 *et seq.*;

e.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code 17200 *et seq.*, the California False Advertising Law, Cal. Bus. & Prof. Code 17500 *et seq.*, and the California Consumer Legal Remedies Act., Cal. Civ. Code 1750, *et seq.*

f.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Code 6-1-105 *et seq.*;

g.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat.  42-110b *et seq.*;

h.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 De. Stat. Code 2511 *et seq.*;

i.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code 28-3901 *et seq.*;

j.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla Stat. 501.201 *et seq.*;

k.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. 10-1-392 *et seq.*;

l.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. 480 *et seq.*;

m.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code 48-601 *et seq.*;

n.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS 505/1 *et seq.*;

o.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. 24-5-0.5-1 *et seq.*;

p.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code 714.1b *et seq.*;

q.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. 50-623 *et seq.*;

r.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. 367.110 *et seq.*;

s.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. 51:1401 *et seq.*;

t.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. 207 *et seq.*;

u.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code, Com. Law 13-101 *et seq.*;

v.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass Gen. L. Ann. 93A *et seq.*;

w.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. 445.901 *et seq.*;

x.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. 325F.67 *et seq.*;

y.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. 75-24-1 *et seq.*;

z.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. 407.010 *et seq.*;

aa.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code 30-14-101 *et seq.*;

bb.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. 59-1601 *et seq.*;

cc.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. 598.0903 *et seq.*;

dd.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. 358-A:1 *et seq.*;

ee.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. 57-12-1 *et seq.*;

ff.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. 56:8-1 *et seq.*;

gg.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law 349 *et seq.*;

hh.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. 75-1.1 *et seq.*;

ii.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code 51-15-01 *et seq.*;

jj.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Code 1345.01 *et seq.*;

kk.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 15 Okla. Stat. tit. 751  *et seq.*;

ll.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or Rev. Stat. 646.605 *et seq.*;

mm.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. 6-13.1-1 *et seq.*;

nn.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws 39-5-10 *et seq.*;

oo.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws 37-24-1 *et seq.*;

20

pp.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code 47-18-101 *et seq.*;

qq.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. Com. Code 17.41 *et seq.*;

rr.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. 13-1-1 *et seq.*;

ss.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. Stat. Ann. Tit. 2451 *et seq.*;

tt.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code 59.1-196 *et seq.*;

uu.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code 19.86.010 *et seq.*;

vv.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of W.Va. Code 46A-6-101 *et seq.*;

ww.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. 100.20 *et seq.*; and,

xx.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. 40-12-101 *et seq*

60.   Plaintiff and the proposed Class were injured by Defendant's conduct, which created artificial demand for the Vehicles at artificially inflated prices. As a direct and proximate

21

result of Defendant's unfair methods of competition and unfair or deceptive acts or practices,

Plaintiff and the proposed Class have suffered actual economic losses by, among other things,

paying for Windstars at artificially inflated prices.  Plaintiff and the proposed Class members are

entitled to damages, treble damages, restitution, disgorgement and/or such orders or judgments

as may be necessary to restore to any person in interest, any money which may have been

acquired by means of such unfair practices and to the relief set forth below.

       **WHEREFORE,** Plaintiff and the Class respectfully pray for the following relief:

       a.      An Order certifying the Class as defined above and appointing the undersigned as counsel for the plaintiff and the Class pursuant to Fed.R.Civ.P. 23;

       b.      Final injunctive relief compelling the defendant to pay the plaintiff and each Class member the value of their defective Windstar minivan or, in the alternative, institute a recall pursuant to which the defect will be repair, at no cost to the plaintiff or the Class member;

       c.      A judgment or declaration finding that defendant's 1999-2003 Windstar minivans violate the implied warranty of merchantability, the express warranties which apply to the minivans.

       d.      An award of punitive damages as allowed under any applicable cause of action asserted herein;

       e.      An award of attorney fees as allowed under any applicable cause of action herein or as allowed by the Court; and

       f.      Any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT III

**Breach of Express Warranty**
**(On Behalf of the Nationwide Class or, Alternatively,**
**each of the State SubClasses)**

       61.    Plaintiff and the Class repeat and incorporate herein by reference each and every

paragraph of this Amended Complaint as though set forth in full in this cause of action.

62.     Defendant expressly warranted that the Vehicles were of good quality, free of defects, and, at a minimum, would actually work properly.

63.     Defendant breached this warranty by selling to Plaintiff and Class members the Vehicle with known rear axle problems, which are not of good quality, and which fail prematurely.

64.     Defendant's breach of this warranty caused damages to Plaintiff and Class members.

65.     Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

66.     The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Ford and Class members, and Ford knew or should have known that the Vehicles were defective at the time of sale and would fail before their useful lives.

67.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**WHEREFORE,** Plaintiff and the Class respectfully pray for the following relief:

a.      An Order certifying the Class as defined above and appointing the undersigned as counsel for the plaintiff and the Class pursuant to Fed.R.Civ.P. 23;

b.      Final injunctive relief compelling the defendant to pay the plaintiff and each Class member the value of their defective Windstar minivan or, in the alternative, institute a recall pursuant to which the defect will be repair, at no cost to the plaintiff or the Class member;

c.      A judgment or declaration finding that defendant's 1999-2003 Windstar minivans violate the implied warranty of merchantability, the express warranties which apply to the minivans.

d.      An award of punitive damages as allowed under any applicable cause of action asserted herein;

e.      An award of attorney fees as allowed under any applicable cause of action herein or as allowed by the Court; and

f.      Any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT IV

### Breach of the Implied Warranty of Merchantability
### (On Behalf of the Nationwide Class or, Alternatively,
### each of the State SubClasses)

68.     Plaintiff and the Class repeat and incorporate herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

69.     Defendant impliedly warranted that the Vehicles were of a merchantable quality.

70.     Defendant breached the implied warranty of merchantability, as the Vehicles were not of a merchantable quality due to their defective rear axle.

71.     As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured, and are entitled to damages.

24

72.     Defendant's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

73.     The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and member of the Class. Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Ford and Class members, and Ford knew or should have known that the Vehicles were defective at the time of sale and would fail well before their useful lives.

74.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**WHEREFORE,** Plaintiff and the Class respectfully pray for the following relief:

a.      An Order certifying the Class as defined above and appointing the undersigned as counsel for the plaintiff and the Class pursuant to Fed.R.Civ.P. 23;

b.      Final injunctive relief compelling the defendant to pay the plaintiff and each Class member the value of their defective Windstar minivan or, in the alternative, institute a recall pursuant to which the defect will be repair, at no cost to the plaintiff or the Class member;

c.      A judgment or declaration finding that defendant's 1999-2003 Windstar minivans violate the implied warranty of merchantability, the express warranties which apply to the minivans.

d.      An award of punitive damages as allowed under any applicable cause of action asserted herein;

e.      An award of attorney fees as allowed under any applicable cause of action herein or as allowed by the Court; and

f.      Any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

**COUNT V**

**Unjust Enrichment**
**(On Behalf of the Nationwide Class or, Alternatively,**
**each of the State SubClasses)**

75.      Plaintiff and the Class repeat and incorporate herein by reference each and every paragraph of this Amended Complaint as though set forth in full in this cause of action.

76.      Plaintiff and Class members conferred a tangible economic benefit upon Defendant by purchasing the Vehicles. Plaintiff and Class members would have expected remuneration from the Defendant at the time this benefit was conferred had they known that the rear axle within the Vehicles would prematurely fail.

77.      Failing to require Defendant to provide remuneration under these circumstances would result in it being unjustly enriched at the expense of Plaintiff and the Class.

78.      Defendant was and continues to be unjustly enriched at the expense of Plaintiff and Class members. This unjust enrichment was beyond any of Defendant's contractual rights.

79.      Defendant's retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

**WHEREFORE,** Plaintiff and the Class respectfully pray for the following relief:

a.    An Order certifying the Class as defined above and appointing the undersigned as counsel for the plaintiff and the Class pursuant to Fed.R.Civ.P. 23;

b.    Final injunctive relief compelling the defendant to pay the plaintiff and each Class member the value of their defective Windstar minivan or, in the alternative, institute a recall pursuant to which the defect will be repair, at no cost to the plaintiff or the Class member;

c.    A judgment or declaration finding that defendant's 1999-2003 Windstar minivans violate the implied warranty of merchantability, the express warranties which apply to the minivans.

d.    An award of punitive damages as allowed under any applicable cause of action asserted herein;

e.    An award of attorney fees as allowed under any applicable cause of action herein or as allowed by the Court; and

f.    Any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT VI

### Fraud
### (On Behalf of the Nationwide Class or, Alternatively,
### each of the State SubClass)

80.    Plaintiff and the Class repeat and incorporate herein by reference each and every paragraph of this Amended Complaint as though set forth in full in this cause of action.

81.    Defendant's made material misrepresentations and omissions concerning a presently existing or past fact. For example, Defendant did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the rear axle, which was not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiff and the other Class Members were fraudulently induced to lease and/or purchase the Vehicles with the said design defects and all of the resultant problems.

82.     These omissions and statements were made by Defendant with knowledge of their falsity, and with the intent that Plaintiff and Class members rely on them.

83.     Plaintiff and Class members reasonably relied on these statements and omissions, and suffered damages as a result.

**WHEREFORE,** Plaintiff and the Class respectfully pray for the following relief:

a.      An Order certifying the Class as defined above and appointing the undersigned as counsel for the plaintiff and the Class pursuant to Fed.R.Civ.P. 23;

b.      Final injunctive relief compelling the defendant to pay the plaintiff and each Class member the value of their defective Windstar minivan or, in the alternative, institute a recall pursuant to which the defect will be repair, at no cost to the plaintiff or the Class member;

c.      A judgment or declaration finding that defendant's 1999-2003 Windstar minivans violate the implied warranty of merchantability, the express warranties which apply to the minivans.

d.      An award of punitive damages as allowed under any applicable cause of action asserted herein;

e.      An award of attorney fees as allowed under any applicable cause of action herein or as allowed by the Court; and

f.      Any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## <u>COUNT VII</u>

### Negligent Misrepresentation
### (On Behalf of the Nationwide Class or, Alternatively,
### each of the State SubClass)

84.     Plaintiff and the Class repeat and incorporate herein by reference each and every paragraph of this Amended Complaint as though set forth in full in this cause of action.

85.    Defendant negligently provided Plaintiff and Class members with false information. Specifically, Defendant negligently made incorrect statements concerning the transmissions in the Vehicles, and negligently failed to disclose or reveal these known defects. Contemporaneously, Defendant made numerous affirmative representations about the quality of its Vehicles.

86.    Plaintiff and Class members justifiably relied on these negligent representations and omissions.

**WHEREFORE,** Plaintiff and the Class respectfully pray for the following relief:

a.    An Order certifying the Class as defined above and appointing the undersigned as counsel for the plaintiff and the Class pursuant to Fed.R.Civ.P. 23;

b.    Final injunctive relief compelling the defendant to pay the plaintiff and each Class member the value of their defective Windstar minivan or, in the alternative, institute a recall pursuant to which the defect will be repair, at no cost to the plaintiff or the Class member;

c.    A judgment or declaration finding that defendant's 1999-2003 Windstar minivans violate the implied warranty of merchantability, the express warranties which apply to the minivans.

d.    An award of punitive damages as allowed under any applicable cause of action asserted herein;

e.    An award of attorney fees as allowed under any applicable cause of action herein or as allowed by the Court; and

f.    Any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court:

1.  determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

2.  appoint Plaintiff as the representatives of the Class and their counsel as Class counsel;

3.  award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

4.  award pre-judgment and post-judgment interest on such monetary relief;

5.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Vehicles or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the design defect;

6.  award reasonable attorney's fees and costs; and

7.  grant such further relief that this Court deems appropriate.

**GOLOMB & HONIK, P.C.**


By:     /Damien Zillas/_____
        Ruben Honik, Esquire
        Richard M. Golomb, Esquire
        Kenneth J. Grunfeld
        Damien Zillas, Esquire
        **Golomb & Honik, PC**
        1515 Market Street, Suite 1100
        Philadelphia, PA 19102
        Telephone:    (215) 985-9177
        Fax:          (215) 985-4169