IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON MARTIN, on behalf of himself and all others similarly situated, | : : : | CIVIL ACTION |
| Plaintiffs, | : : | NO. 10-2203 |
| v. | : : | |
| FORD MOTOR CO., | : : | |
| Defendant. | : | |

## OPINION

**Slomsky, J.**                                                          **February 15, 2011**

## I.    INTRODUCTION

Before the Court are Defendant Ford Motor Company's Motion to Strike Class

Allegations from the Amended Complaint (Doc. No. 16) and Motion to Dismiss the Amended

Complaint (Doc. No. 17).  Defendant contends that class action allegations should be struck from

the Amended Complaint because the proposed Class cannot satisfy the prerequisites of Federal

Rule of Civil Procedure 23, and that the Amended Complaint should be dismissed pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

granted.  For reasons that follow, the Court will deny the Motion to Strike Class Allegations, and

grant in part and deny in part the Motion to Dismiss.

## II.    PROCEDURAL HISTORY

On May 13, 2010, Plaintiff Aaron D. Martin filed a Complaint (Doc. No. 1) against

Defendant Ford Motor Company "on behalf of himself and other similarly situated."  On July 19,

2010, Defendant filed its first Motion to Dismiss (Doc. No. 7).  On the same day, Defendant filed

a Motion to Strike Class Allegations from the Complaint (Doc. No. 8). On August 10, 2010, Plaintiff filed the Amended Complaint (Doc. No. 12). Consequently, the Court denied the first Motion to Dismiss and the first Motion to Strike as moot in an Order dated August 13, 2010 (Doc. No. 13).

On August 31, 2010, Defendant filed another Motion to Strike Class Allegations from the Amended Complaint (Doc. No. 16) and a Motion to Dismiss (Doc. No. 17), which are now before the Court. On September 30, 2010, Plaintiff filed a Response in Opposition to the Motion to Dismiss (Doc. No. 22). On October 7, 2010, Plaintiff filed his Response in Opposition (Doc. No. 23) to the Motion to Strike. On October 14, 2010 and October 18, 2010, Defendant filed a Reply in further support of each motion (Doc. Nos. 27, 28).

The Court held oral argument on both Motions on November 29, 2010. At the conclusion of oral argument the Court directed that, should the parties wish to submit additional briefing on the subject matter of the Motions, they should do so within two weeks. On December 13, 2010, each party filed an additional memorandum of law in support of, or in opposition to, the Motions (Doc. Nos. 36, 37).

## III.   FACTUAL BACKGROUND

### A.   <u>Plaintiff Aaron D. Martin and the Class</u>

In May 2010, Plaintiff's wife heard a "strange sound emanating from under" Plaintiff's 2001 Ford Windstar ("Windstar"). (Am. Compl., Doc. No. 12 ¶¶ 13, 15.) Looking underneath the vehicle, Plaintiff saw what looked like a crack in the vehicle's rear axle. (<u>Id.</u> ¶ 15.) He drove to a mechanic's shop to address the problem. (<u>Id.</u>) While driving there, Plaintiff heard a "terrible crack, and then the sound of metal dragging against the asphalt." (<u>Id.</u>) He lost control

of the vehicle "to a large degree," coasting to a stop in a parking lot on the side of the road. (Id.)

Plaintiff brings this action "on behalf of himself and all others similarly situated," alleging that his experience with the Ford Windstar is representative of the experience of other purchasers or lessees of the same vehicle. (Id. ¶ 16.) In the Amended Complaint, he defines class members as "current owners and lessees with defective rear axle in their purchased and/or leased Windstar, model years 1999-2003." (Id. ¶ 1.)

B.    The Defect

Plaintiff asserts that Defendant "expressly warranted" that the Windstar was free from defects and that it would repair or replace a defective part of a vehicle it sold (the "Warranty"). (Doc. No. 12 ¶¶ 24-25.) Despite this Warranty, Plaintiff alleges that Defendant failed to disclose a known defect in the rear axle of the 1999-2003 Ford Windstars. (Id. ¶ 4.) He asserts that the defect in the rear axle is a product of a design defect. (Id.)

The rear axle of a Windstar is an unsealed, hollow cylinder that fails because it rusts from the inside out. (Id.) Plaintiff asserts that the axle rusts because the axle as designed, collects and traps water and other corrosive agents. (Id.) Without drainage ports, these agents cause the axle to rust and, in its weakened state, ultimately to crack. (Id.)

Plaintiff alleges that this design defect "has become the subject of discussion among members of the automotive community." (Doc. No. 12 ¶ 27.) He asserts that Windstar owners have publicized their displeasure with the defect, posting comments on the internet and filing complaints with the Office of Defects Investigation, an office within the National Highway Traffic Safety Administration ("NHTSA"). (Id. ¶¶ 24-25.) According to the Amended Complaint, Defendant had notice of the defect since information about it has been widely

disseminated.  (Id. ¶ 27.)

**C.      The Amended Complaint**

The Amended Complaint contains seven counts.  In Count One, Plaintiff alleges that

Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law

("UTPCPL"), 73 PA. CONS. STAT. ANN. § 201-1 *et seq.*, when it made affirmative

misrepresentations or material omissions concerning the condition of the Windstar, which it

knew or should have known suffered from a design defect.  (Doc. No. 12 ¶¶ 45-53.)

In Count Two, Plaintiff asserts that Defendant's conduct in concealing the rear axle

defect  "constitutes . . . unconscionable commercial practices, deception, fraud, false pretenses,

false promises, misrepresentations and/or knowing concealment, suppression, or omission of

material facts with the intent that Plaintiff and Class members would rely upon [them]" in

violation of "state consumer protection laws."  (Doc. No. 12 ¶¶ 54-60.)  Plaintiff lists the

consumer protection statute of each state in the Amended Complaint.

Count Three contains an allegation that Defendant breached the express Warranty, which

provided that Windstars were of good quality and free of defects, when it sold Windstars with a

rear axle defect.  (Doc. No. 12 ¶¶ 61-67.)  Count Four contains the claim that Defendant

impliedly warranted that the Windstars were "of a merchantable quality," and that it breached the

implied warranty when it sold the vehicles with the defect.  (Doc. No. 12 ¶¶ 68-74.)  He further

alleges in this Count that Defendant's attempt to limit or disclaim the implied warranty are

unconscionable and therefore unenforceable.  (Id. ¶¶ 72-73.)

In Count Five of the Amended Complaint, Plaintiff asserts that he and Class members

conferred a benefit on Defendant when they purchased Windstars and that Defendant has been

unjustly enriched by this benefit at the expense of Class members. (Doc. No. 12 ¶¶ 75-79.)
Count Six alleges that Defendant intentionally made material misrepresentations and omissions
regarding the rear axle defect, which hindered discovery of the defect until after the Warranty had
expired. (Doc. No. 12 ¶¶ 80-82.) Plaintiff asserts that he and Class members were fraudulently
induced to lease or purchase Windstars, reasonably relying on Defendant's statements and
omissions. (Id. ¶ 83.)

Finally, in Count Seven, Plaintiff claims that Defendant negligently made "incorrect
statements concerning the transmissions[1] in the Vehicles" and made other "affirmative
representations about the quality of the Vehicles," and that he and class members reasonably
relied on these representations and omissions. (Doc. No. 12 ¶¶ 84-86.)

### D. Class Allegations

Paragraphs 38 through 44 of the Amended Complaint are titled "Class Allegations." In
these paragraphs Plaintiff states that he is bringing this action pursuant to Fed. R. Civ. P. 23(b)(3)
as a class action. He defines the Class as: "All individuals within the United States and its
territories who have acquired, by lease or purchase, a 1999, 2000, 2001, 2002, or 2003 model
year Ford Windstar minivan and still own the vehicle." (Doc. No. 12 ¶ 38.) He identifies two
subcategories: (1) Class members who have suffered a "rear axle failure" (as he has); and (2)
Class members who own Windstars, but whose axles "have not yet failed." (Id. ¶ 39.)

The Amended Complaint contains allegations that correspond with the requirements of
Fed. R. Civ. P. 23(a). Plaintiff asserts that:

---

[1] This is the first (and only) mention of the Windstar *transmission*. It is most likely a
typographical error and should state "rear axle" instead.

(1)     The Class is so numerous that joinder of all members is impracticable because Defendant manufactured and sold 1,708,381 Windstars between 1995 and 2003 and that approximately 949,100 of those were manufactured with the axle defect (Doc. No. 12 ¶ 40);

(2)     There are questions of law or fact common to the Class given the nature and extent of the design defect, Defendant's knowledge of the defect and the benefit Plaintiff and Class conferred in buying the vehicle with the defect (Id. ¶ 41);

(3)     His claims or defenses are typical of the claims or defenses of the Class because, like the vehicles of Class members, Plaintiff's Windstar was affected by the axle defect suddenly and without warning (Id. ¶ 42); and

(4)     He will fairly and adequately protect the interests of the Class because he has retained experienced counsel, has or can acquire adequate financial resources to represent the Class and has knowledge concerning the subject matter of the action (Id. ¶ 43).

Paragraph 44 of the Amended Complaint sets forth the reasons why a class action provides the most fair, efficient and appropriate method for litigating the controversy. Plaintiff argues that a class action is the most appropriate method for resolving the controversy because: (1) common questions of law or fact predominate over any questions affecting individual members given the nature of the defect; (2) individual members of the Class lack any significant interest in prosecuting individual actions; (3) the difficulties in managing a class action are slight in comparison to other controversies which have been brought as class actions; and (4) given the complexities of the issues raised in the litigation and the expense of the litigation, it would be difficult for Class members to maintain individual actions.

### E.    **Defendant's Voluntary Recall**[2]

On August 26, 2010, Defendant announced a recall of Ford Windstars (the "Recall") due to the defect in the rear axle. (Doc. No. 17, Exhibit 1.) The Recall was announced after Defendant received notice from National Highway Traffic Safety Administration ("NHTSA") that consumer complaints lead NHTSA to investigate safety-related defects with the Windstar's rear axle and that an investigation revealed a defect. The Recall applies to all Ford Winstars, model years 1998-2003, sold in or currently registered in a "high corrosion area" ("HCA").[3] Individuals whose vehicles were recalled overlap with the Class proposed here. The proposed class covers a larger number of individuals. Proposed class members include those who either bought or registered their vehicle in a HCA, and those who did not buy or register their vehicle in a HCA.

Pursuant to the Recall, Windstar "[o]wners will be notified and instructed to take their vehicles to a Ford or Lincoln/Mercury dealer for an inspection of the rear axle. Owners of vehicles without axle cracking will be notified when to return for the installation of reinforcement brackets to extend the axle durability in the presence of corrosion. Owners who have vehicles with cracked axles will either be offered a repair or alternative transportation until

---

[2] The Amended Complaint does not, and could not, contain allegations that refer to this recall because Defendant announced a recall of Windstars with the axle defect on August 26, 2010, after Plaintiff filed the Amended Complaint. Information about the Recall is included because both Motions and briefs submitted in support of, and in opposition, to the Motions refer to the Recall.

[3] The HCA includes twenty-two state and territories of the United States: Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, West Virginia, and Wisconsin.

parts become available." (Doc. No. 17, Ex. 1.)

**F.    Defendant's Motion to Strike Class Allegations from the Amended Complaint (Doc. No. 16)**

Defendant moves to strike class allegations from the Amended Complaint, arguing that Plaintiff fails to allege a certifiable class under Fed. R. Civ. P. 23.  Defendant presents four arguments in support of its Motion.  First, Defendant argues the proposed Class fails to meet the superiority requirement of Fed. R. Civ. P. 23(b)(3), because a class action is not "superior to other available methods for fairly adjudicating the controversy," as Rule 23 requires.

Second, Defendant asserts that individualized legal and factual issues will predominate over common issues.  Since Plaintiff seeks certification of a nationwide class and since the Amended Complaint contains counts based upon state law, Defendant argues that the Court may be called upon to apply the law of each state and that variation in state law will predominate over any common legal issues. According to Defendant, individualized factual issues will also predominate over common factual issues given that "justifiable reliance," an element of fraud, must be proven as to each plaintiff or class member.

Third, Defendant asserts that Plaintiff is neither a typical nor an adequate representative of the proposed Class because he did not suffer physical injury as a result of the defect and because he may be subject to several "unique defenses"[4] under Pennsylvania law.  Finally, Defendant argues that the proposed Class is not sufficiently cohesive to warrant class

---

[4]  These include the notice requirement of 13 Pa. Cons. Stat. Ann. § 2607(c)(1) and the statute of limitations on a breach of warranty claim, which are discussed more fully *infra*, with respect to the Motion to Dismiss.

certification under Fed. R. Civ. P. 23(b)(2), since the proposed Class is not "bound together" through a preexisting relationship or common trait as required by Rule 23(b)(2).

Plaintiff submits in his Response in Opposition to the Motion to Strike Class Allegations, that class certification is warranted because his proposed Class meets the requirements of Fed. R. Civ. P. 23, and that Defendant's proposed alternative — the voluntary recall of cars with the axle defects — is not a superior method for resolving the controversy. According to Plaintiff, the Recall cannot be considered in connection with the Motion because the documents regarding the Recall are not attached to or relied upon in the Amended Complaint, which was filed before the announcement of the Recall.

Plaintiff asserts that the Recall is an inadequate substitute for a class action for several reasons. First, Plaintiff notes that the Recall does not apply to Class members who did not buy or register their vehicle in a HCA, but whose vehicles have a rear axle defect. Second, the Recall does not include vehicles registered in coastal areas where corrosion is common, such as California. Class members located in these locations will not have their claims addressed in the Recall. Third, Plaintiff asserts that the substance of the "inspection regime" proposed by Defendant may not identify and correct all defective axles. Finally, he asserts that the Recall will not provide a purchaser or lessee with money damages which can be awarded in this case.

### G. <u>Defendant's Motion to Dismiss (Doc. No. 17)</u>

Defendant presents four arguments in support of the Motion to Dismiss. First, it asserts that the Recall renders Plaintiff's claims moot. Second, Defendant argues that Counts III and IV alleging breach of express and implied warranties, should be dismissed because Plaintiff failed to

notify Defendant of the breach prior to filing the Complaint. Third, it asserts that Counts I, II, VI, and VII, which allege a violation of the consumer protection law of Pennsylvania, a violation of the consumer protection law of each state and territory of the United States, fraud, and negligent misrepresentation, respectively, should be dismissed because the economic loss doctrine prohibits recovery in tort where a product causes damage only to the product itself. Finally, Defendant argues that Count V should be dismissed because the claim for unjust enrichment is time-barred.

## IV.    LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's Opinion in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009). After <u>Iqbal</u> it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. <u>Id.</u> at 1949; <u>see also</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). Applying the principles of <u>Iqbal</u> and <u>Twombly</u>, the Third Circuit in <u>Santiago v. Warminster Twp.</u>, No. 10-1294, 2010 WL 5071779 (3d Cir. Dec. 14, 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 2010 WL 5071779, at *4; <u>see also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of <u>Iqbal</u> and articulating the 12(b)(6) analysis as a two-part test).

"First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions,

are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"  <u>Santiago v. Warminster Twp.</u>, 2010 WL 5071779, at *4 (quoting <u>Iqbal</u>, 129 S. Ct. at 1947-50).  A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  <u>Fowler</u>, 578 F.3d at 210-11 (citing <u>Phillips v. County of Allegheny</u> 515 F.3d 224, 234-35 (3d Cir. 2008)).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'"  <u>Iqbal</u>, 129 S Ct. at 1950.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u>

## V.     DISCUSSION

### A.     <u>Motion to Strike Class Allegations</u>

Defendant argues that the Court should strike the class action allegations from the Amended Complaint because the proposed class fails to satisfy the prerequisites of Fed. R. Civ. P. 23.  Since the Motion to Strike filed by Defendant is premature, the merits of this argument will not be addressed at this stage of the case.

In <u>Korman v. The Walking Co.</u>, 503 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007), the court held that a motion to strike class allegations is premature when a plaintiff has failed to file a motion for class certification.  The court reasoned that a motion to strike class allegations under Fed. R. Civ. P. 23(d)(4) is, "for all practical purposes, identical to an opposition to a motion for class certification," and that "[i]t would be improper to allow Defendants to slip through the

backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion and when discovery on the issue is still ongoing." Id. at 762.

The court recognized that some courts have treated a motion to strike under Rule 23(d)(4) and the response to the motion as one for class certification. Id. at 763. However, absent a good reason for this treatment, a court should decline to do so. Id. In Korman, the court explained "that courts usually employ Rule 23(d)(4) to strike class allegations *after* the court has determined, under Rule 23(c)(1), that maintenance of a class action is inappropriate. In other words, Rule 23(d)(4) is the procedural mechanism for striking class allegations from the complaint *once the Court determines that maintenance of the action as a class is inappropriate.*" Id. at 762 (internal citation omitted).

The Third Circuit has not addressed this issue. However, courts within the Third Circuit have followed Korman, finding a motion to strike class allegations premature where a motion for class certification has not been made and denied. See Bell v. Money Resource Corp., No. 08-639, 2009 WL 382478, at *3 (E.D. Pa. Feb. 13, 2009) (denying a motion to dismiss class allegations because it found that defendant was using the motion to attack the merits of the class itself, which is improper before a motion for class certification has been filed); Rosenberg v. Avis Rent A Car Sys., Inc., No. 07-1110, 2007 WL 2213642, at *4 (E.D. Pa. July 31, 2007) (same); Brothers v. Portage Nat'l Bank, No. 06-94, 2007 WL 965835, at *7 (W.D. Pa. Mar. 29, 2007) (same); Padilla v. GMAC Mortg. Corp., 389 B.R. 409, 447-48 (Bankr. E.D. Pa. 2008) (same). Accord Beauperthuy v. 24 Hour Fitness USA, Inc., No. 06-0715, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006).

Here, Defendant has filed a Motion to Strike Class Allegations from the Amended Complaint prior to Plaintiff moving to certify the proposed class. Defendant's Motion is premature. Korman, 503 F. Supp. 2d at 762-63. In the Motion, Defendant advances reasons why class certification should not be granted and "for all practical purposes," the Motion is "identical to an opposition to a motion for class certification." Id. at 762. It would be premature to address the merits of Defendant's Motion before a motion to certify a class is filed or even when discovery on this issue may be ongoing. Id. Therefore, the Court will deny Defendant's Motion to Strike Class Allegations from the Amended Complaint (Doc. No. 16).

### B.       Defendant's Motion to Dismiss

#### 1.       Mootness

Defendant asserts that the voluntary Recall renders the Amended Complaint moot. Plaintiff argues to the contrary, asserting that the Court cannot consider the Recall in deciding the Motion to Dismiss because pursuant to Fed. R. Civ. P. 12(b)(6), with few exceptions not applicable here, a court cannot consider a document "outside the Complaint." (Doc. No. 22 at 4.) Further, Plaintiff submits that, even if the Court considers the Recall, it does not render his claims moot. The Court agrees with Plaintiff that even if the Recall is considered, it does not render the claims moot.

In United States v. Chrysler Corp., 158 F.3d 1350 (D.C. Cir. 1998), the U.S. Court of Appeals for the District of Columbia Circuit found that defendant Chrysler Corporation's ("Chrysler") recall did not render the appeal moot. Id. at 1353-54. In the Chrysler case, the government filed suit against Chrysler in the District Court for the District of Columbia seeking a

recall of Chrysler vehicles containing defective seat belt assembly anchorages. Id. at 1352. The district court ordered a recall of vehicles with this defect. Id. at 1353. Chrysler appealed the district court's decision. During the appeal, "Chrysler initiated a recall process by notifying owners, purchasers, and dealers of the alleged noncompliance, offering to provide a remedy at no charge, and submitting a "Noncompliance Information Report" to NHTSA." Id. At the time of the circuit court's opinion, however, "Chrysler ha[d] not . . . completed all that [was] required under the recall order." Id.

In considering whether Chrysler's initiation of the recall rendered the appeal moot, the circuit court noted that the recall was not in full compliance with the district court's order. Id. The circuit court found that a ruling in Chrysler's favor would allow Chrysler to avoid those obligations imposed by the district court's order that had not been addressed by the recall. Id. Therefore, the circuit court concluded that it was able to provide Chrysler with a "partial remedy," and held that this "partial remedy" was sufficient to prevent the case from being moot. Id. at 1353-54.

Similar to the Chrysler case, the Recall here does not render the case moot, because the Court has the ability to grant Plaintiff and class members a "partial remedy." Not all Windstars within the proposed class are covered by the Recall. As discussed above, the Recall only applies to those vehicles in HCA. The Amended Complaint, however, proposes a nationwide class, thereby encompassing vehicles in all fifty states and territories of the United States. Additionally, Plaintiff challenges the adequacy of the Recall, arguing that the proposed solution would not remedy the defect in its entirety, and would not result in an award of money damages. A court-ordered recall may require Defendant to provide a more expansive remedy than the one

proposed in the Recall.  Moreover, since a court proceeding may result in a remedy such as money damages, Plaintiff's claims are not moot.

## 2.     Notification and the Warranty Claims (Counts III and IV)

Defendant argues that Plaintiff's breach of warranty claims are barred because he failed to notify them of the breach as required by Pennsylvania law.  Plaintiff asserts that he "notified" Defendant of the breach by filing this lawsuit.  In support of this argument, Plaintiff cites Bednarski v. Hideout Homes & Reality, Inc., 709 F. Supp. 90 (M.D. Pa. 1988), for the proposition that filing of a lawsuit constitutes constructive notice.

Contrary to Plaintiff's position, Defendant argues that Plaintiff, in making this argument, confuses the terms "notice" and "notify" "which the [Uniform Commercial Code (the "UCC")] explicitly distinguishes."  (Doc. No. 17 at 8-9 (citing Am. Fed'n of State County & Mun. Emps. v. Ortho-McNeil-Janssen Pharm., Inc., No. 08-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010)).)  Defendant asserts that although filing of the Amended Complaint constitutes "notice" under the UCC, it is insufficient "notification," which the UCC requires prior to filing a complaint for breach of warranty.

The Court agrees with Defendant that the filing of the Complaint is insufficient "notification" under the UCC.  However, for the reasons that follow, the Court finds that the Amended Complaint alleges that Defendant was "notified" of the breach prior to the filing of the lawsuit.

Section 2607(c)(1) of the UCC[5] provides that a buyer must "within a reasonable time

---

[5] 13 PA. CONS. STAT. ANN. § 2607(c)(1).

after he discovers or should have discovered any breach notify the seller of breach or be barred

from any remedy." "Under UCC § 1202(a), a person has *notice* of a fact when the person has

actual knowledge of it, has received notification of it, or, from all of the facts and circumstances

known to that person at the time in question, has reason to know it exists." Am. Fed'n of State

County & Mun. Emps., 2010 WL 891150, at *6. In contrast, pursuant to § 1202(d) to *notify*

means "'give a notice or notification to another person by taking such steps as may be reasonably

required to inform the other person in ordinary course, whether or not the other person actually

comes to know of it.'" Id.

    In American Federal of State & County Municipal Employees, plaintiff filed a class

action alleging that fentanyl patches, marketed and distributed by defendant, were defective. In

that case, plaintiff argued that defendant had notice of the breach under § 2607(c)(1) when

plaintiff filed the lawsuit. Plaintiff argued that "Defendants were already well aware of the

breach and had the opportunity to make good." Id. at *6. The court concluded that this

"constructive notice" did not satisfy the "notification" requirement of § 2607(c)(1). The court

explained:

> [T]he purpose of notification under § 2607(c) is to allow the seller an opportunity to
> resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit.
> Therefore, even assuming that Defendants were aware that the fentanyl patches were
> defective, Defendants may not have been aware of Plaintiffs' intent to file a class
> action lawsuit, and were denied the opportunity to negotiate or settle this claim
> without judicial involvement. To "notify" under the UCC requires the affirmative
> act of notification, and Section 2607(c)(1) explicitly requires the buyer to "notify the
> seller of breach or be barred from any remedy." Plaintiffs' "constructive notice"
> argument does not address whether Plaintiffs ever actually and affirmatively notified
> Defendants of the breach, as required by § 2607(c)(1), prior to initiating this
> litigation.

Additionally, the Third Circuit recently analyzed § 2607(c) of the UCC in <u>Vanalt</u> <u>Electrical Construction, Inc. v. Selco Manufacturing Corporation</u>, and concluded that a "review of Pennsylvania precedent and other authorities interpreting the UCC indicates that the Pennsylvania Supreme Court would agree that a buyer must prove compliance with Section 2607 before recovering for a breach of contract or warranty involving nonconforming goods. . . ." Here, the Court must also treat the § 2607(c) reasonable notification requirement as a condition precedent to recovery, with Plaintiffs bearing the burden to prove that reasonable notification was given. As reasonable notification is a material element necessary to sustain recovery of a UCC breach of warranty claim, Plaintiffs were required to affirmatively allege that they reasonably notified Defendants. Inasmuch as § 2607(c) bars a buyer's recovery absent the buyer providing reasonable notification of the breach, it follows that a buyer must also plead, at a minimum, in its Complaint, that it provided reasonable notification in order to state a viable claim for recovery.

<u>Id.</u> at *6.

Here, Plaintiff alleges in the Amended Complaint that Defendant "had longstanding knowledge of the problem," that "Defendant has been aware for years of the true nature and cause of the axle problem in the Vehicle," and that "[t]his knowledge is evidenced by widespread complaints on the internet and elsewhere about the rear axle problem, accounts from Class members who have complained about this very issue *to Defendant*." (Doc. No. 12 at ¶¶ 2, 6 (emphasis added).) Further, Plaintiff alleges that "[o]wners of the vehicles publicly complained to the United States government about the rear axle problems," and that Defendant had "actual and constructive notice of the problem." (<u>Id.</u> at ¶¶ 29, 32.)

In making these allegations, Plaintiff has done more than allege Defendant had "notice" of the defect. Plaintiff is alleging that class members took the affirmative step of "notifying" Defendant of the breach by complaining "about this very issue *to Defendant*." (<u>Id.</u> at ¶ 6 (emphasis added).) This "notification" allowed Defendant, as the seller, the opportunity to cure prior to Plaintiff initiating the lawsuit. Consequently, Plaintiff has satisfied the "notification"

requirement of § 2607(c)(1), and Counts III and IV will not be dismissed on this ground.[6]

### 3. The Economic Loss Doctrine and the "Fraud Claims" (Counts I, II, VI, and VII)

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995); see also Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001). Said differently, the doctrine prevents a plaintiff from recovering economic losses in tort without physical injury. "Where [a] plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania

---

[6] Defendant submits an additional argument in support of dismissal of Counts III and IV. Defendant asserts that the claim for breach of warranty arose after the warranty had expired. The express warranty was limited to a term of three years. The Amended Complaint alleges that the axle failed eight years after the Windstar was first sold. Therefore, Defendant reasons that the warranty had expired and Count III alleging the breach of warranty should be dismissed as time-barred. According to Defendant, Count IV should also be dismissed as time-barred because the written warranty specifically limits any implied warranty to the same terms as the express warranty.

In response, Plaintiff acknowledges the time limitation in the express warranty. However, he argues the limitation should not apply because such limitation is unenforceable in this situation where it is unconscionable for a defendant, with knowledge that a product is defective, to sell the product without disclosing the defect to the buyer. (Doc. No. 22 at 12 (citing Henderson v. Volvo Cars of N. Am., L.L.C., No. 09-4146, 2010 WL 2925913, at *7 (D.N.J. Jul 21, 2010).) The Amended Complaint contains an allegation that the warranty was unconscionable due to the relative bargaining power of the parties and the non-disclosure of the defect. (Doc. No. 12 ¶¶ 65-66.) Plaintiff reasons that because this allegation must be accepted as true for the purpose of the Motion, the express warranty's time limitation will not bar his claim.

The Court is required to accept as true Plaintiff's version of the facts for purpose of the Motion. Here, Plaintiff alleges that the time-limitation on the warranty was unconscionable because Defendant knew that the product it sold was defective and that the defect would not surface until the warranty had expired. In doing so, Plaintiff has alleged facts to support a plausible claim that the warranty should not be limited to a three-year period. Therefore, the warranty claims are not barred by the time-limitation and the Court will not dismiss Counts III and IV on this ground.

law says that plaintiff's redress comes from the law of contract, not the law of tort." Stein v. Fenestra Am., L.L.C., No. 09-5038, 2010 WL 816346, at *3 (E.D. Pa. Mar. 9, 2010).

The fraud exception to the economic loss doctrine provides that the doctrine does not apply where plaintiff alleges an intentional tort. Werwinski v. Ford Motor Co., 286 F.3d 661, 676 (3d Cir. 2002). Under the fraud exception, a plaintiff may recover in tort for purely economic losses where plaintiff alleges an intentional tort such as fraud. Id.

However, the Third Circuit has limited the fraud exception. In Werwinski v. Ford Motor Co., the Third Circuit held that the fraud exception to the economic loss doctrine does not apply where the intentional misconduct relates to the quality of the good sold. 286 F.3d 661, 677 (3d Cir. 2002). Accordingly, when the intentional misconduct relates to the quality of the good sold, the economic loss doctrine applies independent of the fraud exception and bars recovery in tort for purely economic losses. Id. Said differently, the economic loss doctrine applies to bar tort claims for purely economic loss even where plaintiff alleges an intentional tort such as fraud, if the misrepresentation relates to the quality of the good sold.[7] Id. In formulating this limitation to the fraud exception, the Third Circuit reasoned that where misrepresentations relate to the quality of the goods sold the misrepresentation is "'intertwined' with, and not 'extraneous' to, [a] breach of warranty claim," and "are properly remedied through claims for breach of warranty." Id. at 676-78 (quoting Cooper Power Sys., Inc. v. Union Carbide Chem. & Plastics Co., 123 F.3d 675, 682 (7th Cir. 1997)).

---

[7] The economic loss doctrine, the fraud exception, and the Werwinski limitation apply to statutory and common law fraud (Counts I and VI), as well as the negligent misrepresentation claim (Count VII). See Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 223 (3d Cir. 2010) (finding that the doctrine applied to bar a negligent misrepresentation claim).

Here, the intentional conduct alleged is Defendant's intentional misrepresentation that Windstars were not defective. This misrepresentation concerns the quality of the Windstar, the good sold. Consequently, although Plaintiff has alleged an intentional tort in Counts I, VI, and VII, because the misrepresentation concerns the quality of the Windstar, the fraud exception to the economic loss doctrine does not apply. Therefore, the doctrine itself applies to bar these tort claims for purely economic loss. Accordingly, the economic loss doctrine bars the tort claims alleged in Counts I, VI, and VII for statutory fraud (UTPCPL), common law fraud, and negligent misrepresentation, respectively. These claims are intertwined with the breach of warranty claims and may be properly remedied through such claims. Werwinski, 286 F.3d at 677-78.[8]

Defendant groups Counts I, II, VI, and VII together in making the argument that the economic loss doctrine applies to bar such claims. However, Werwinski's application of the economic loss doctrine only applies to claims arising under Pennsylvania law. Count II, charging violations of the consumer protection laws of numerous states, noticeably does not allege a

---

[8] In O'Keefe v. Mercedes-Benz U.S., LLC, 214 F.R.D. 266 (E.D. Pa. 2003), the court found Werwinski inconsistent with Pennsylvania law. The court refused to apply Werwinski's limitation of the fraud exception to the economic loss doctrine. O'Keefe, LLC, 214 F.R.D. at 275. The court found that the economic loss doctrine does not apply to intentional tort claims, regardless of whether the alleged misrepresentation relates to the quality of the goods sold. Id.
   Since the Third Circuit decided Werwinski, numerous courts have recognized its reasoning may be inconsistent with Pennsylvania law. See, e.g., DeFebo v. Andersen Windows, Inc., 654 F. Supp.2d 285, 292-93 (E.D. Pa. 2009); McElwee Group, LLC v. Mun. Auth. of Borough of Elverson, 476 F. Supp. 2d 472, 477 (E.D. Pa. 2007); Seward v. Certo, No. 05-6363, 2006 WL 266150, at *2 (E.D. Pa. Feb. 2, 2006); Rock v. Voshell, 397 F. Supp. 2d 616, 627 n.4 (E.D. Pa. 2005). However, while the concerns expressed in O'Keefe are not without merit, they are not unanimously supported by Pennsylvania law. DeFebo, 654 F. Supp. 2d at 293. While an issue such as this remains unsettled under Pennsylvania case law, "this Court is bound by a Third Circuit decision where that court has predicted how the Pennsylvania Supreme Court will decide an issue." Id. at 294. Accordingly, "[t]his Court will . . . follow the decision in Werwinski, as it is bound to do, until the Pennsylvania Supreme Court addresses the issue." Id.

violation of Pennsylvania law. Therefore, <u>Werwinski</u> does not apply to bar the claim alleged in Count II. To the extent the consumer protection laws of other states are limited by an exception similar to that articulated by <u>Werwinski</u>, this argument is not now before the Court.

### 4. Statute of Limitations and the Unjust Enrichment Claim (Count V)

Pennsylvania law imposes a four-year statute of limitations on claims of unjust enrichment. 13 Pa. Cons. Stat. Ann. § 5525(4). "Whether a complaint is timely filed within the limitations period is a matter of law for the court to determine." <u>Sevast v. Kakouras</u>, 915 A.2d 1147, 1153 (Pa. 2007) (quoting <u>Crouse v. Cyclops Indus.</u>, 745 A.2d 606, 611 (2000)). "Generally speaking, the statute of limitations begins to run as soon as the right to institute and maintain the suit arises." <u>Id.</u>

Defendant cites <u>Cole v. Lawrence</u>, 701 A.2d 987, 989 (Pa. Super. Ct. 1997), for the proposition that the four-year period begins to run on the date the relationship between the parties is terminated. Defendant argues that date in this case is either September 2001, when Plaintiff bought the Windstar, or September 2004, when the warranty expired. It argues that using either date, an unjust enrichment claim is time-barred. However, for the following reasons, Defendant's statute of limitations defense is premature and the Court will not address its merits at this time.

"Federal Rule of Civil Procedure 8(c) requires that a defendant plead an affirmative defense, such as a statute of limitations, in his answer."[9] <u>Robinson v. Johnson</u>, 313 F.3d 128,

---

[9] Fed. R. Civ. P. 8(c) provides: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . statute of limitations."

134 (3d Cir. 2002). Federal Rule of Civil Procedure 12(b) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." However, Rule 12(b) provides that the defenses listed in Rule 12(b) may be made by motion. This list does not include a statute of limitations defense. Therefore, "a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion." Robinson, 313 F.3d at 135.

The Third Circuit recognizes an exception to the general rule that a statute of limitations defense be raised in an Answer. The "Third Circuit Rule" "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Id. Accord Beckett v. Dept. of Corrections, No. 10-0050, 2010 WL 5092973, at *2 (M.D. Pa. Dec. 8., 2010). The Rule requires it be clear, from the face of the Complaint, that the claim is barred by the statute of limitation.

Here, it is not clear from the face of the Amended Complaint that Plaintiff's unjust enrichment claim is barred by the statute of limitations. As noted above, Defendant cites Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. Ct. 1997), for the proposition that the four-year period begins to run on the date the relationship between the parties is terminated. However, Cole holds that the four-year statute of limitation begins to run on the date the relationship between the parties is terminated in the case of quantum meruit actions. Quantum meruit actions are those alleging breach of an implied-in-fact contract, which although aimed at preventing "unjust enrichment," are distinct from unjust enrichment claims, which are contracts implied-in-law. See, e.g., Pratter v. Penn Treaty Am. Corp., No. 451 M.D. 2010, 2010 WL 4395447, at *4 (Pa.

Cmwlth. Oct. 22, 2010) ("'Unjust enrichment,' though equitable in nature, is described as a doctrine creating a 'contract implied-in-law, or quasi contract.'").

Here "the statute of limitations begins to run as soon as the right to institute and maintain the suit arises." Sevast v. Kakouras, 915 A.2d 1147, 1153 (Pa. 2007). The Third Circuit has held that the cause of action accrues when "the first significant event necessary to make the claim 'suable' occurs." Lake v. Arnold, 232 F.3d 360, 366 (3d Cir. 2000) (quoting Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3d Cir. 1985)) (internal quotation omitted). It is not clear from the face of the Amended Complaint at exactly what point the claim for unjust enrichment became "suable." It may not have been suable until Plaintiff discovered the defect or rather when the defect manifested itself in May 2010. Using the May 2010 date, the four-year statute of limitations on the claim of unjust enrichment would not have expired.

Since it is not clear from the face of the Amended Complaint when the case became "suable," it is not clear from Plaintiff's statement of his claim that the statute of limitations on the unjust enrichment claim has run. Therefore, the Motion to Dismiss is not the proper method for resolution of the statute of limitations defense. In accordance with the general rule, the statute of limitations defense may be raised in an Answer and litigated at a future date, not by this Motion. Robinson, 313 F.3d at 135. Accordingly, the Court will deny Defendant's Motion to Dismiss Count V as time-barred.

## VI. CONCLUSION

For the foregoing reasons, the Court will deny the Motion to Strike Class Allegations from the Amended Complaint (Doc. No. 16) and will grant in part, and deny in part, the Motion to Dismiss the Amended Complaint (Doc. No. 17). Counts I, VI, and VII will be dismissed with prejudice.

An appropriate Order follows.